UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA

| | | |
|---|---|---|
| CHRISTOPHER DIRIG | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL NO. 3:12cv549 |
| | ) | |
| WILLIAM WILSON, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION AND ORDER

This matter is before the court on a motion for summary judgment, which was originally submitted as a motion to dismiss pursuant to Rule 12(b)(6), filed by the defendants on June 21, 2013. The plaintiff, Christopher Dirig ("Dirig"), proceeding *pro se*, filed his response on July 9, 2013. Dirig filed a further response on July 15, 2013, titled "Motion to Dismiss Defendant [sic] Motion to Dismiss Pursuant to Rule 12(b)(6)". The defendants filed their reply on August 7, 2013. Dirig then filed a "Motion to Dismiss State Defendant's Reply Brief" on September 3, 2013.

On October 18, 2013, this court entered an order converting the motion to dismiss to a motion for summary judgment and granting Dirig's request for subpoena to facilitate his efforts to obtain his medical records from Corizon Medical Services. Dirig was to file his final brief 30 days after receiving his medical records. On March 7, 2014, this court entered an order granting Dirig's motion for extension of time and ordering defendant William Wilson to provide Dirig's medical records to him within 30 days, as Dirig was unable to afford to pay Corizon for the records. On April 7, 2014, defendants filed a Notice of Compliance, indicating that they had delivered copies of Dirig's medical records to Dirig via institutional mail on March 19, 2014.

On April 17, 2014, Dirig filed a motion for extension of time to file brief, which was

granted on April 21, 2014. On April 29, 2014, Dirig filed his final response brief. Dirig then submitted a series of letters to the court on June 3, 2014, July 1, 2014, and July 8, 2014.

For the following reasons, the motion for summary judgment will be granted in favor of the defendants.

## Summary Judgment

Summary judgment must be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Not every dispute between the parties precludes summary judgment, however, since "[o]nly disputes over facts that might affect the outcome of the suit under the governing law" warrant a trial. Id. To determine whether a genuine issue of material fact exists, the court must construe all facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. Heft v. Moore, 351 F.3d 278, 282 (7th Cir. 2003). A party opposing a properly supported summary judgment motion may not rely merely on allegations or denials in its own pleading, but rather must "marshal and present the court with the evidence she contends will prove her case." Goodman v. Nat'l Sec. Agency, Inc., 621 F.3d 651, 654 (7th Cir. 2010).

## Discussion

Dirig's complaint raises, pursuant to Section 1983, an Eighth Amendment claim alleging, *inter alia*, that Department of Correction officials subjected him to abusive or excessive force in violation of the Eighth Amendment's prohibition on cruel and unusual punishment. In support

2

of their motion, the defendants[1] contend that Dirig's complaint fails because he has not exhausted administrative remedies.

Dirig was an inmate with the Indiana Department of Corrections ("IDOC") at all times relevant to his complaint. The Prison Litigation Reform Act of 1996, 42 U.S.C. § 1997e(a) (1994 ed., Supp. V) ("PLRA") states that: "'No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.'" *Porter v. Nussle*, 534 U.S. 516, 520 (2002). The "exhaustion requirement applies to all prisoners seeking redress for prison circumstances or occurrences," and includes all available administrative appeals. *Id; see also Burrell v. Powers*, 431 F.3d 282 (7th Cir. 2005); *Pozo v. McCaughtry*, 286 F.3d 1022 (7th Cir. 2002). Consequently, "[a]ll 'available' remedies must now be exhausted; those remedies need not meet federal standards, nor must they be 'plain, speedy, and effective.' Even when the prisoner seeks relief not available in grievance proceedings, notably money damages, exhaustion is a prerequisite to suit." *Porter*, 534 U.S. at 524.

An administrative remedy is "available" if the administrative procedure has "authority to take some action in response to a complaint." *See Larkin v. Galloway*, 266 F.3d 718, 723 (7th Cir. 2001). The meaning of "some action" embraces discipline of officers, moving an inmate to another unit or facility, and even merely holding a hearing. *Id.* It is not enough that an inmate file a grievance. "To exhaust administrative remedies, a person must follow the rules governing

---

[1] William Wilson, Tina Hill, Officer William Aubin, Officer Ralph Calhoun, Officer Aaron Jonas, Officer Harold Bird III, and Officer Scott Clouse.

3

filing and prosecution of a claim. . . . [T]hese include time limits." *Pozo*, 286 F.3d at 1025.

The Seventh Circuit has held that a failure to exhaust is a failure to comply with the elements of a federal statute precluding a plaintiff's statutory right to relief. *See Frey v. Envtl. Prot. Agency*, 270 F.3d 1129, 1135 (7th Cir. 2001). Exhaustion of administrative remedies is a precondition to asserting relief under the PLRA. This Court may also take judicial notice of whether the plaintiff has failed to exhaust his administrative remedies. *See Kolodiy v. U.S.*, 2011 WL 3489934 at *3 (E.D. Wis.) (taking judicial notice of plaintiff's failure to exhaust by relying on the agency's records).

The Seventh Circuit "has taken a strict compliance approach to exhaustion. A prisoner must properly use the prison's grievance process. If he or she fails to do so, the prison administrative authority can refuse to hear the case, and the prisoner's claim can be indefinitely unexhausted." *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006)(quoting *Pozo*). Further, the Court has held that a prisoner whose grievance had been rejected as untimely had not "exhausted" within the meaning of the PLRA. *See Woodford v. Ngo*, 548 U.S. 81.

The defendants note that Dirig has failed to disclose in his Complaint whether he has properly exhausted the grievance process regarding alleged mistreatment by corrections officers at Indiana State Prison ("ISP"). The defendants point out that a check of Dirig's grievance history reveals that he never filed any grievance against ISP staff about the alleged mistreatment set forth in his Complaint. In order to give the prison an opportunity to address his grievance fully on the merits and properly exhaust his remedies, Dirig must not only file a grievance but also timely appeal the response to his grievance to the facility executive assistant within ten working days from receipt of the response. The defendants contend that Dirig has failed to

4

accomplish either step of the grievance process.

In his response, Dirig admits that he did not exhaust his administrative remedies. However, he claims he did not file a grievance within the time prescribed by the IDOC grievance process because he was on suicide watch and not permitted the use of any pens, pencils, or paper.

The defendants and Dirig have filed evidence in support of their respective positions. The defendants have submitted records of Dirig's grievance history while incarcerated in IDOC. Dirig has submitted letters he received from Mr. Howard Morton, the Executive Assistant at the Indiana State Prison, where Dirig was incarcerated at the time of the alleged incidents which form the basis of his complaint. Dirig also asserts that he is entitled to a "good faith" exception to the exhaustion rule because his attempts to exhaust were thwarted by prison officials. Dirig has also submitted a few pages of his medical records.

Even after receiving his medical records, which Dirig claimed would prove his inability to exhaust his grievances, Dirig still fails to present any evidence that he was precluded from exhausting his remedies. Dirig has asserted that on April 19, 2011 he was beaten by prison officials and housed naked in a "dog-like cage". The medical records show that on April 19, 2011, at 7:35 p.m. "Ofd here from IDU [segregation], states he was moved too early back to population and now had told ofc he wanted to kill himself. Call made to Dr. Matias who wants ofd stripped out and placed back in cell in IDU. Call to cpt. Welch who states he will make that happen and send someone over to pick ofd up who is in holding cell at this time."

On April 20, 2011 a comment was placed in Dirig's chart update indicating that : "MHP Patterson spoke with Officer Blair on IDU at approximately 2:15 p.m. on 4/20/11. MHP

Patterson's intention was to verify whether there were any problems or concerns on the unit regarding Ofndr Dirig. Officer Blair stated offender Dirig has been fine and that he was currently participating in recreation during the time of this conversation. It appears ofndr Dirig's alleged symptoms of stress have subsided and he is comfortable enough to leave his cell and participate in recreation while on IDU. No other follow-up to be done by MHP Patterson at this time unless directed otherwise by lead psychologist."

On April 22, 1011, Patterson completed a segregation visit and noted that "patient's appearance is appropriate" and "behavior is described as unremarkable." It was also noted that Dirig was placed in segregation beginning on April 14, 2011, and that the reason for placement was for conduct issues. Additionally, "Ofndr asked why he was stripped out in a bubble call on IDU. Sgt. McNeal reminded ofndr he stated, a couple of days ago, that he felt suicidal. Ofndr Dirig said, 'No man, I was just a little stressed. This is some bullshit.' MHP asked if he was suicidal now. Ofndr stated 'no'. MHP will forward this information to lead psychologist."

While the records show that Dirig was in segregation in the days immediately following his alleged beatings, the records fail to show that anything was amiss. Rather, Dirig was on suicide watch due to his own actions of claiming he was suicidal. And the very day after Dirig alleges he was beaten so badly he is mentally scarred for life, the records show that Dirig was out of his cell and enjoying recreation time.

Moreover, Dirig fails to inform the court when he was released from segregation and, presumably, permitted access to pens and paper. Additionally, Dirig fails to indicate whether he took advantage of Section IX.B. of the "Offender Grievance Process" which provides that "In segregation units or other units where an offender does not have access to other offenders, the

complaining offender may request that a staff person in that unit assist in the preparation of a grievance or an appeal."

Further, the defendants point to what has been labeled by Dirig as "Exhibit C." It is a copy of a letter, dated June 15, 2011, sent to Dirig from Mr. Howard Morton, the Executive Assistant at Indiana State Prison, where Dirig was incarcerated at the time of the alleged staff misconduct. The letter discusses Dirig's allegations of staff misconduct on or about April 19, 2011, which is the subject of this lawsuit. *Id*. The letter informs Dirig that the grievance forms he filed nearly two months after the alleged staff misconduct were untimely and were being returned to him. *Id*. The letter also informs Dirig that while his grievance was untimely and therefore rejected, that his allegations were referred to the Internal Affairs department for review. *Id*. In another letter from Mr. Morton to Dirig regarding various allegations, dated May 13, 2013, Mr. Morton advised Plaintiff to utilize the *Offender Grievance Process* to address his issues. *See Plaintiff's Exhibit D*. However, Dirig's official grievance history (filed with defendants' motion), indicates that Dirig failed to file a timely grievance with DOC regarding the allegations of staff misconduct that he similarly alleges in this lawsuit. *See Offender Grievance History, Defendants' Exhibit E*. That fact is further confirmed by the declaration of Pam James, the Litigation Liaison at Indiana State Prison.

The "Time Requirements" for submitting a grievance are set forth in Section XIII.C. of the "Offender Grievance Process". This section explains that the offender is to attempt to contact the staff member causing the grievance withing 5 working days from the date of the incident, and that if the complaint is not resolved by the staff person within 10 working days, the offender "shall be permitted to submit a grievance form as to the issue presented to staff."

7

Presumably, even if Dirig was on suicide watch on April 19, 2011, he would have been able to contact a staff member and verbally report the incident, which would give him another 10 working days before he was even permitted to file a grievance. April 19, 2011, was a Tuesday. That gave Dirig until April 26 to submit a verbal grievance to a staff member about the April 19 incident. Dirig has not submitted any evidence that he was still on suicide watch on April 26. Even if he was on suicide watch, there was no need for pen and paper at this time. Dirig would not have needed pen and paper until May 3, 2011, at the earliest. As that would be 10 working days after the incident, and assumes that he informed a staff member of the incident on April 19, but nothing was done, which would then permit him to file a formal grievance form. Moreover, the time frame for filing a grievance begins after a staff member does nothing for 10 days, and ends five working days later. Thus Dirig could have filed his grievance any time from May 3 through May 10, 2011. Again, Dirig has not presented any evidence that he was unable to file a grievance during that time frame. Dirig's grievance record shows that he filed two grievances on May 23, 2011, but neither of them mentioned the April 19 incident but, rather, concerned Dirig's request for a "loaner TV", and also a request for breathing treatments.

As there is no evidence that Dirig's alleged attempts to file a grievance were obstructed in any way, the court finds that Dirig has failed to exhaust his administrative remedies. Consequently, pursuant to the PLRA, Dirig's complaint cannot go forward and summary judgment must be granted in favor of the defendants.

## Conclusion

On the basis of the foregoing, the defendants' motion to dismiss/summary judgment [DE47] is hereby GRANTED.

Entered: July 29, 2014.

s/ William C. Lee  
William C. Lee, Judge  
United States District Court